The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. First case is 2010-79, Daniel Patrick v. Robert Wilkinson. Thank you, Madam Clerk. Mr. Wooster. Good afternoon, Your Honors, and may it please the Court, my name is Daniel Wooster. You represent Mr. Patrick, the plaintiff? Correct, Your Honor. Thank you very much. My name is Daniel Wooster. As Judge King just mentioned, I'm appearing on behalf of Plaintiff Appellant Daniel Patrick in this case, who owned a bump stock that is currently in the possession of the ATF. He challenges the bump stock ban that was signed by Matthew Whitaker. The District Court erred in granting the government's motion to dismiss for lack of standing because my client prospectively challenges the rule, so there is a live controversy. No one questions that my client had standing to challenge the bump stock rule at the outset of this litigation, which is the relevant inquiry, and the operative complaint continues to challenge the bump stock rule as signed by Matthew Whitaker, and alleges that he was invalidly serving as Acting Attorney General when he signed it. Even just reading the complaint in the light most favorable to my client, he continues to prospectively challenge the rule despite Mr. Barr's attempt to ratify it. For example, he seeks a declaration that the final rule unconstitutionally and unlawfully caused my client harm from its inception because it deprived him of his property right to alienate his bump stock from the day it was signed, and he was not constitutionally or statutorily authorized to issue the final rule. That's a JA-19. In a separate declaratory relief claim, my client seeks that issuance of the final rule by Mr. Whitaker, wholly apart from Mr. Barr's ratification on March 14, 2019, was illegal because my client was injured from the final rule's inception, and Mr. Whitaker was not constitutionally or statutorily authorized to issue the final rule on December 18, 2018. At JA-19 and 20, you can see that we also sought relief in the alternative for the harm caused between the time Mr. Whitaker signed the rule and Mr. Barr ratified it, but that is a separate request for declaratory relief. This was first made clear in our reply to the government's opposition to our summary judgment motion. To give some brief context, the parties engaged in cross-motions briefing, the government filed a motion to dismiss. Counsel, not to stop you, but I'm glad you started here, and I hate to jump in so early, but I'm not sure I read the complaint the same way you do, and so I want a little help understanding that. When I look at particularly paragraph 23 on JA-18, and I look at that in light of the subparagraph E about curing the harm, and in light of the amendments that you're making, you know, with the red-lined copy of this complaint that's submitted, it doesn't look to me at all like you're challenging the ratification, and in fact, it seems that you're accepting that the ratification cured the problem. Have you given me everything that I can look at to think about that differently, or is there anything else that you think I need to look at? Because of the standard of review, Your Honor, which is to read the complaint in the light most favorable to us, and the fact that, you know, as Your Honor just mentioned, it quote I do think it's important that at the hearing, we made abundantly clear to the district court judge that we were continuing to prospectively challenge the rule, and that we were challenging Mr. Barr's ratification. How is that consistent with the actions you took with the joint status report after the ratification was filed, where you withdrew the preliminary injunction motion? I mean, that seems to confirm my reading, which is you don't have a future injury any longer. That's what the joint status report seems to suggest. How am I supposed to read it that way? We don't actually agree that you should read the withdrawal of the preliminary injunction request for this reason. We filed the motion for preliminary injunction in the pre-enforcement stage, while my client still had his property, and before it was turned over to the ATF within an agreement with the ATF. So once the rule actually went into effect, and it was no longer necessary to continue to bring a preliminary injunction motion on an emergency basis, which is how we initially brought it, seeking to enjoin the rule from going into effect. At that point, my client had already turned over his bump stock to the ATF, and then we were claiming that going forward, and then we made our challenges going forward, it was no longer necessary to do it in an emergency posture. Do you remember the date when the rule went into effect? If I recall, it was March 23rd, your honor. I can't remember off the top of my head. I apologize. 1919? I mean, 2019? Yeah, 1990. Yes, 2019. I tell old I am. Only you are old enough to know. I didn't know that they had bump stocks in 1919, your honor. Right, but in 2019, Whitaker took over in late 2018, right? That is correct. That's correct, your honor. And they allege he didn't do much of anything until he signed this bump stock thing, because everybody at the Justice Department knew he was illegally appointed. That's correct, your honor, and yet he still signed this regulation, which is what gave us standing to bring the case. And was it ratified by Mr. Barr when he came in? You agree with that, don't you? Not quite, your honor. It actually wasn't ratified as soon as he came in. It was actually ratified by Mr. Barr in the midst of highly expedited briefing that was occurring before the D.C. circuit at the time, after we filed our opening brief, and just before the government filed its expedited response. But also, do you agree that it was before the rule went into effect, right? That is correct, your honor. In fact, I think it's the 26th of March, he ratified it on the 14th of March. So before it went into effect, he had already ratified it. We agree, your honor. He ratified it before the rule's effective date. All right, so Mr. Wolfka, then, if we disagree with you regarding the Attorney General's action and its validity, do you lose? In other words, if we hold that Attorney General Barr acted in a valid manner in ratifying the rule, is that the end of your case here? I think it depends on what you mean by—I have two separate answers to your question. In short, the answer is no, but the longer answer is it depends on what you mean by validly ratified the rule. There are two— If we hold that Attorney General Barr was authorized to ratify the rule and did so, does that end your case? We still— Why not? We still have a separate challenge based on the President's policy of designating invalid acting officers. We do— Why does that matter if Attorney General Barr had the authority and acted within that authority in ratifying the bump stock rule? If your honors hold that the ratification was valid as both a matter of the voluntary cessation doctrine and as a matter of not implicating Section 3348 of the FVRA, which has an anti-ratification provision, we still have our general policy claim against the such as Mr. Whitaker. And I should note here that although the government argues that there are these seven consecutive steps that would have to occur before my client would be harmed again, if you ask my friend on the other side, I believe he'll agree that the first six of those steps already have occurred with the designation of Monty Wilkinson as the acting Attorney General when there was a validly serving acting Attorney General at the time, Assistant Attorney General John Demers, Assistant Attorney General of National Security. So in our view, that just goes to show that this is the kind of injury that under both as a matter of a voluntary cessation and as a matter of our policy argument, the government not only says it has the authority to continue doing this, it has already done this for the very office of the Attorney General itself. Counsel. So you brought up the what you're referring to, I think, is your policy argument, the policy of replacing under a three. Do you agree that that is an action that can be taken by the president? And I think it's just parenthetically only the president. This is three, three appointment under a three that this is all about, or at least one of the arguments is about that that can be done by the president alone. Three, three, four, five, a three does best under the general vacancies law in the president alone, the ability to designate certain individuals as an acting officer. And that is and that is the conduct or that's the authority under which the policy that you're challenging is exercised. That's how it was done here. The president signed something under a three to say that Mr. Whitaker was the attorney general. But I know what I'm trying to get at here is you're you're a light. You want us to enjoin that, quote, unquote, policy. But the person who does that action is the president. And the president is not a defendant. Understand how we could enjoin the president from using a three in the manner that you think is improper when we the president is not before us. Your Honor, we do sue the United States as well. And there are there are cases, I believe we cited these in our brief from both the Supreme Court and the D.C. Circuit, suggesting that it isn't the this isn't injunctive relief against the president himself that we're seeking. We are seeking a declaratory judgment against the United States that a three cannot be used when three, three, one of the exceptions in three, three, four, seven is what I just make sure I understand your argument, because the point of that is the only person who can exercise that official duty is the president of the United States. Right. President Biden is the only person that can do that. And so a general injunction isn't what you're seeking. You're actually seeking to enjoin the president because it's an official duty of the president and only the president. I mean, the statute couldn't be clearer. A, the president is not before us, President Biden. And second, even if he was before us, we don't have authority to enjoin him from the exercise of his official duties. And so if we get to this policy argument, I'm having a really difficult time seeing how you've sued the right parties. A, and I understand why you didn't sue the president, because I suspect you recognize that you can't get an injunction against the president for the exercise of his official duties. So how do I get through that thicket to even even consider the merits of your policy claim? Your Honor, respectfully, we we are seeking a declaratory judgment that would affect the president's ability to exercise his A3 authority. But that would be no different than what the Supreme Court did in the line item veto case where there the authority to line item veto appropriations bills from Congress was given to the president and the president alone. And the court still saw fit to say that it was all right to enjoy the ability to do so. Or I believe in that case, it was actually grant a declaratory judgment that that was that violated the Constitution. All right. So but how in this context? So your position is we can declare that the president may not exercise that authority? Yes, we think that is that what you want us to declare? Or do you want us to declare that what Mr. Whitaker does is illegal? With regard to the policy argument, to be fair, we do seek a declaration that the A3 cannot be used in this way in joining that policy. But the court, as you highlight, Judge King, needn't go anywhere near that far because we have a live challenge to this current bump stock rule. And to get all the relief that we seek, this court need only say that Mr. Whitaker was invalidly designated under 3345 because there was already a valid acting attorney general that was designated under 3347 A1B. And Rosenstein there. Is that right? That is that is correct, Your Honor. Rob Rosenstein automatically became the acting attorney general at the time that Mr. Sessions resigned. But then what happened here was that Mr. Whitaker replaced Mr. Rosenstein, not Mr. Sessions. That's correct. So what the president did was he displaced the statutory designee, the acting attorney general, a statutory designee that has been around that in a statute that long predates the current iteration of the Federal Vacancies Reform Act. With an employee, though, before you run out of time, we've got a case here in the Fourth Circuit, Smith case, a lot of Smith cases. But this one is another Smith case where Judge Wilkinson wrote an opinion with Judge Traxford, another judge, Judge Floyd. And they said that what happened with Whitaker was all OK. If I may, I'm out of time, Your Honor, but just to briefly answer your question. Yeah, I want to ask. I want you to know what they say. It's OK. How are you going to overcome that? We're bound by prior decisions of bounds of this court. This family is. Of course. Just very briefly, with respect to the merits constitutional analysis, we believe that should be treated by this court as dicta, especially in light of the avoidance canon, because the constitutional analysis in Smith made not a whit of difference to the outcome of that case, given that the court expressly found that even if Mr. Smith were correct on his appointments clause claim, he quotes, would still not be entitled to the relief he seeks. But whatever we have to, we would have to face up to the Smith case and say it doesn't. It's not entitled to be considered as precedent and declare what they did as dicta. Correct. Correct. I thought you would say that we would have to go in bank and fix it because the Smith case is wrong. We haven't made we haven't done much of declaring prior decisions about fellow judges as dicta. And just very briefly to follow up, there is no question at the very least that the footnote that had the court's musings on what the FVRA says is dicta, because as the court itself acknowledges there, Mr. Smith conceded that if the FVRA applied, its statutory text authorized the designation of General Whitaker. And in addition to that, the court itself said that the party had just suggested that the FVRA might not have been available there. So at the very least, there's no question that this court is not bound by what the court said in Smith with regard to the Federal Vacancies Reform Act. And with that, I'll reserve the remainder of my time. Very good. Mr. Hinchwood, I mispronounced. You got it right. Thank you, Your Honor. Brad Hinchwood for the United States. I think it's important just to start out by teasing apart the two different claims here. So I think the simplest one to address quickly is plaintiff's claim about this purported policy of noncompliance with the FVRA. The simplest resolution to that claim is precisely what the district court did here, which is to recognize that plaintiff has to demonstrate an imminent or certainly impending injury from that alleged policy in order to demonstrate any entitlement to relief and any standing to seek any relief on that claim. And plaintiff hasn't even tried to meet that standard here. He doesn't acknowledge it in his brief and really has made no effort to show that he meets it. So as to that claim, that's the simplest path here. Now, as to the other question here, plaintiff has, in this appeal, tried to contend that he is bringing a prospective challenge to the rule that's forward-looking. And not only is that inconsistent with the text of the complaint for the reasons that were being discussed earlier and with the conduct immediately after the ratification by Attorney General Barr, it's also just not consistent with the way plaintiff briefed this case in district court. So the government moved to dismiss this case, and it emphasized that Attorney General Barr had validly ratified the rule. If plaintiff was actually contending that the rule is not valid. I thought there was an anti-ratification provision in one of these statutes. It says you couldn't ratify it. There is, but plaintiff never invoked that in his complaint and never invoked that in his motion for summary judgment or his opposition. What was that provision put in there? It was enacted as part of the FBRA in 1998. I'm talking about plaintiff's conduct here, whether he raised a claim on that basis at all. Does it just apply to the Attorney General or does it apply to all other cabinet members too? It applies to anyone serving under the FBRA. But at least here, what plaintiff did in his motion for summary judgment and his opposition to the government's motion to dismiss was he didn't contest the validity of the ratification. He didn't say that provision applied here. He didn't say there was any problem with the way the rule had been ratified. Instead, he argued that the voluntary cessation doctrine applied. And that doctrine, in order for it to apply- I'm not challenging that. Does he concede that the law is something different than what the law is? No, Your Honor. It's not that he's- I didn't think that a party could concede principles of law and concede facts maybe. No, it's not that he's conceding principles of law. It's that he never raised a claim that the ratification was invalid. He never advanced this argument in district court in response until a few sentences in his reply brief. And this court has held no obligation- But if we agree with you and Judge Boyle on standing, we don't have to get to that, or do we? Well, if you agree with us that the way the complaint is best read is as seeking only relief, and really I think it's frankly the only way to read the complaint, especially in light of the way the case was then litigated, is that it sought relief solely for this narrow few-month period in the past, a declaratory judgment about that period of time. If you agree with us on that, then yes, what Judge Boyle did here is exactly right. There's no ratification challenge at all, and you certainly can't seek declaratory relief related to some past injury. That doesn't address that kind of injury. So when you look at plaintiff's actual filings here, never raise that kind of challenge. Yes, I'm sorry. Now, just to make sure that I understand, to go back to I think Judge Keenan's question from earlier, your point is didn't raise it below, so we should not now address it. But I take it that you would agree with Judge Keenan's position that if we somehow found it to be adequately raised below, then we could resolve the case by finding under the FVRA that the president or that bar was entitled to ratify, given that it was a delegable duty. Of course, yes. If you concluded that this argument was properly raised and not forfeited, even though for all the reasons I've explained it was, then you would have discretion to reach it. Of course, and for all the reasons we've laid out, this was Mr. Barr's ratification was, in fact, proper. This is not the sort of function or duty in the narrow sense that Section 3348 is referring to. And then even if you got beyond that, of course, then there would be that the ratification only matters if you think that everything this court said in Smith was dicta, because, of course, the ratification is only. Can you give me an example? So the attorney general's duties by statute appear to be broadly delegable. Are there other individuals whose duties are not subject to delegation? So in other words, does your reading of this provision, the non-delegation provision, does it read it superfluous or would it apply? And if so, to whom? In what context would it apply? There are some statutes that provide that a certain official may not delegate certain duties.  Sure. I apologize for the length of the citation. But if you wanted to look, for example, at 42 U.S.C. 14952 B.2, that's an example of a provision that says the Secretary of State can waive certain adoption regulations for international adoptions, but that power, quote, may not be delegated, close quote, right? There's an example where, and I think if you search that language just in the U.S. Code in general, you can find some examples. Now, it's not a huge swath of duties necessarily, but that's precisely because Congress recognized that it's important to have government continue to function in the event of a vacancy and that parties who are subject to government action or who are relying on government action need to be And of course, it creates a default rule for Congress going forward. If there are circumstances where Congress wants to mark out certain duties as non-delegable, then in those circumstances, it can do so. It knows exactly what language it needs to use to accomplish that purpose and trigger that consequence under the FDRA. So the fact that most duties, of course, are delegable is a reflection of Congress's intent. And if you look at the legislative history on the FDRA, it's very clear that Congress was concerned with ensuring that government not be paralyzed in the event of a vacancy. They didn't want it to be paralyzed, but they also put that anti-ranification in there because there are some of them that didn't want the president running everything through acting heads of departments, getting around the statutory succession requirements. And I read that this thing is even called the Byrd rule, and I know enough about the Senator Byrd that was being talked about that he thought that these department heads should go through Senate approval processes. Well, I have an idea of what that was about. Right. Well, two points about that. So one is that, for a reason I'm happy to get into in more detail, the text of the actual anti-ratification provision pretty clearly requires this result as compared to plaintiff's reading. But also, Your Honor, the FDRA in general sets up all manner of different restrictions and requirements on acting officials and how long they can serve and under what conditions. And I think that package in general is meant to set the ground rules for when the president can have acting officials serve in different capacities. And I don't think it's I think it's a mistake to focus too narrowly on one particular part of that package, especially where the legislative history specifically about that provision is very clear that it's talking about non-delegable duties, right? It's talking about, you know, for the most part, duties that only that officer can perform. And of course, that's not true here. Not only is the general or the general duties here delegable under the general vesting and delegation statute, but I mean, there are two specific delegations that were in effect at the time this rule was promulgated. The ATF director or the deputy attorney general could have promulgated this rule on the day it came out. So to say that the only person who could perform this duty was the attorney general is just simply not correct. There were at least at the very moment, two other people who could have done it, you know, even independent of the general. The ATF director and the deputy attorney general? Yes. So, you know, that's why that statutory language is so important. I mean, plaintiff's theory is essentially that whenever there's a delegation, I'm sorry, whenever there's a vacancy, those delegations essentially would become meaningless, that they would basically be revoked in the event that a vacancy arises. But that can't be, it's not a sensible way to get a statute. It's certainly not what Congress intended, as you can tell from the entire discussion of avoiding paralysis and knowing. Can I? Can I? These bump stocks had the effect, they turn semi-automatic weapons into automatic weapons. Isn't that correct? Yes, they convert, yes, weapons into machine guns. That's correct. Yeah. Why wouldn't somebody making a bump stock and distributing it, then they're making, they're helping to make a machine gun, correct? That's correct, Ron. Yes. So why wouldn't that be a, wouldn't that be aiding and abetting crimes as machine guns are illegal? Certainly, yes. You've got criminal statutes on the books to that effect since the 1930s. Why would you need a regulation? Your Honor, just to give you some background on the litigation over the bump stock rule in general, separate from this case, ATF had previously issued guidance about whether bump stocks specifically qualified as machine guns that was, that concluded that they were not, and then revisited that conclusion. Well, they're not a machine gun, but they turn another weapon into a machine gun. Right, ATF had reached the opposite conclusion. They combined with a semi-automatic weapon, they make a machine gun. Yes, that's correct. Which has been illegal since 1934, correct? Well, possession has only been illegal since 1986, but certainly registration has been required since 1934. Okay, can I go back to the sort of beginning here, and if we had not had an amended complaint and we just were operating under the original complaint, not the second amended complaint, would you agree that that adequately challenged the rule as a whole, such that if it was the ratification, because it says the final rule is improper and invalid, would that have adequately, for standing purposes, would that complaint, had it remained in place, allowed Mr. Patrick to have standing at least to challenge the rule in its current form, not just the Whitaker version? I would have to go back and review that original complaint, but I mean, I think certainly it'd a lot closer to a realm where that would be true, I mean, not least because you would actually plainly have a prospective challenge to the rule. I still think you would presumably as a plaintiff want to amend it. Because it says to enjoin the final rule, right? He's seeking to enjoin the final rule and claims to be injured by the final rule. You might well have a mootness argument to be made, but he would have standing on that complaint. I think that's probably right, Your Honor, but I think that also just underscores why when plaintiff then amended his complaint and stopped making that sort of request and instead started substituting this theory about the time period between the promulgation and the ratification and needing some kind of relief related to that, that really all of this, up to and including the argument that he advanced to the district court, which is voluntary cessation applies, which means the government has stopped the relevant conduct that was injuring me. Namely, the invalidly promulgated rule is now validly promulgated because of the ratification. All the way up to that point, there's no indication that the ratification is being challenged. It's only in their reply that they first start to raise this argument and this court's been clear, like every other, that district courts don't need to reach out and decide arguments raised for the first time in a reply. Can you address, unless one of my colleagues has a question, the argument that your colleague made that in joining the FVRA quote unquote policy, they can do that without the president and not involving in joining the president, relying on the line item veto case. Can you respond to? I understand your argument is that we don't get to that question, but if we if we got to that question, do you agree that they can sink to declare that the president's sole authority under a three cannot be exercised? Your honor, I want to be careful about answering this and not getting in front of whatever the people above me think about these questions. But I do know as a general matter, we don't think that injunctive relief is available against the president. And to the extent you're seeking injunctive relief against the president, that would that would not be proper. I think what my colleague was referring to is that not only so their first count asked for an injunction. And as you point out, there'd be serious problems with trying to issue an injunction that ran to the president or affected the president in carrying out his duties. But they also have these sort of alternative requests for declaratory relief. But if you can't, but if you can't join the president, you can't declare what the president, you know, does as being unconstitutional either, right? Because the Declaratory Judgment Act doesn't expand our jurisdiction. It just supplements the remit. Your honor, I yeah, I want to, again, just be careful about making broad statements on this particular topic. But I do know that, you know, it would be pretty extraordinary to conclude that, you know, not only, frankly, that the president is, you know, somehow acting unlawfully, a policy of the president acting unlawfully. But that that's true, even where Congress has explicitly by statute conferred that particular authority on the president strikes me as as pretty. If there are no further questions, I would rest on. Well, you think this ought to be resolved on the standing point? We just need to affirm Judge Boyle. I think so, your honor. I think you can state that, you know, the policy claim that if we get if we go past that, you when you got anything you want to say about that Smith case that I was asking your colleague about? Well, your honor, I mean, I think certainly this where this court says we hold I generally take that at face value. And this court in Smith said we hold that Whitaker's appointment complies with the appointments clause on with respect to the FDRA argument, which my colleague was trying to distinguish a bit. I mean, there it's not all that different from what the court did. There is not all that different from what plaintiff is asking you to do here with respect to his his argument about the ratification, which is, you know, even if plaintiff didn't raise that argument, the criminal defendant Smith didn't raise that argument in district court. He raised it on appeal and the court rejected that argument. At a minimum, I think that's all. You know, it's not only correct, as we've explained in our brief, but it's consistent with what every other court, including the Ninth Circuit and numerous district courts have held when they've looked at the two statutes in conjunction. So, you know, it's sort of six of one and a half dozen of the other from that standpoint. Thank you, Your Honors. Thank you, sir. Mr. Walker. Thank you, Your Honor. And I'll start with your last question and a response to my colleague on the other side. It doesn't actually, as Judge Friendly cautioned, a judge's power to bind is limited to the issue that is before him. He cannot transmute dictum into a decision by waving a wand and uttering the word hold. And in that case, there's no question that even on appeal, Mr. Smith did not argue that 508 governed the acting attorney general and displaced the FVRA, as we affirmatively argue here. So this court did not resolve the FVRA issue in Smith and is squarely presented here. And I do want to note that, contrary to what my colleague said, we did challenge the ratification throughout our briefing and from the outset, even at the Second Amendment complaint. We initially did it by arguing that it was— Can I ask this question? Maybe this will help clarify, at least in my mind. If you did not, in the amended complaint, just accept my hypothetical, that you did not challenge the ratification in your Second Amendment complaint, hypothetically, could you remedy that by making some reference to it in subsequent briefing? So in other words, don't we really just have to look at the Second Amendment complaint? Because if it's raised there, great. If it's not, the fact that you make reference to ratification during the argument or in a reply brief is not sufficient to say the complaint's allegations, because that's what we have to look at for standing. Is that not fair? I do think that the antecedent standing question is answered by whether or not we had standing at the outset of the litigation. It's not measured from the point of the Second Amendment complaint. And there's no question— The Supreme Court in Rockwell tells us that's not true, right? So if you remove allegations that deprive you of jurisdiction in an amended complaint, we look to the amended complaint to establish jurisdiction. So if you had it in the initial, but you then remove those allegations, then you are then deprived of jurisdiction, right? You're the master of your own complaint. You don't get to bring a federal claim and then file an amended complaint that gets rid of the federal claim and only asserts state law contract claims and allege that you still have federal question jurisdiction because the original complaint included a federal question that you've now dismissed. I suppose, Your Honor, that if your question is if you find that the district court correctly determined that our Second Amended complaint does not prospectively challenge the rule, do we not have standing to prospectively challenge the rule? Then the answer is yes. But I will caution that the upshot to that is that actually will not just decide that issue forever. It will be right before this court again in the future, possibly in front of a different panel. There's no question that my client and others do have standing to bring a claim that the bump stop rule remains invalid because it could not be ratified in this way under 3348. Then you ask us, is that why you ask us to permit an amendment now while it was on appeal? We did make that request in our opening brief, and that is one, if this court does not agree with us that we have always challenged this rule, as we argue, then in the alternative, yes, we have explicitly made that request in our opening brief on appeal. And we would ask this court on appeal, and we do cite a plethora of authority from this and other circuits that allow amendment on appeal under certain circumstances to avoid the cost of judicial resources that were required. You have authority. You have four-circuit authority on that. I didn't remember us ever doing that. I, let me step back and say I would need to go back to the brief. I know I cited D.C. Circuit authority, and I will, I do believe, in fact, that we cited an opinion by your arguments on appeal that would apply in this circumstance. That's what a claim is made below. You can make a new argument for a claim. What you can't do is make a new claim. You're arguing here, and there is some authority, but that's not the right case that suggests that in some circumstances, we could allow you to amend. I'm not sure I understand how that would work. Uh, very briefly, um, to, to answer your Honor's question, and because I see that I'm running out of time, and I, I do want to address the fact that, uh, because we did claim that, uh, uh, the ratification was invalid because of voluntary cessation, we argue that we can make the argument on appeal that it was also invalid under 3348. That's the Yee V. Escondido and, uh, Citizens United cases. Um, and that aside, it was the government that decided to re-raise its ratification defense in response to our summary judgment motion, so it's perfectly natural that we would respond to that defense in our reply. Replies reply to arguments raised in the response. Um, and finally, on the issue of whether or not 3348 applies only to non-delegable statutes, I think it's quite informative that in all of this litigation that we've had with the government, they have now identified, for the first time, one non-delegable duty by a cabinet officer, and that's the duty to waive certain adoption regulations by the Secretary of State. It is absurd to suggest that what Congress was attempting to do in enacting 3348 was to just prevent the, uh, Secretary of State's, uh, uh, certain adoption regulation, regulations to be later ratified by an- a validly serving, uh, individual. And in fact, Congress did not use the word non-delegable. That was what the minority wanted the statute to say, and that language was rejected for what is in the statute now. This Court should not find that Congress enacted sub silencio language it previously rejected. The Congress made very clear that it was trying to take the FERA out of the dueling ratification context. And critically, the duty in dueling itself was entirely delegable. So if the government is correct that 3348 only applies to non-delegable duties, uh, then Congress would not have accomplished what it was trying to explicitly do in putting 3348, the anti-ratification provision in the statute. I see that I'm out of time, uh, so unless there are further questions. Thank you very much, Mr. Wifter. Well, we appreciate the arguments of counsel. We'll take a matter under advisement.
judges: Robert B. King, Barbara Milano Keenan, Julius N. Richardson